

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 4, 2017

**IN RE ANNA B. ET AL.**

**Appeal from the Chancery Court for Rutherford County**
**No. 14CV-1498      J. Mark Rogers, Judge**

_____

**No. M2016-00694-COA-R3-PT**

_____



This is a termination of parental rights case. Father appeals the termination of his parental rights, to two minor children, on the grounds of: (1) severe child abuse, Tenn. Code Ann. §§ 36-1-113(g)(4) and 37-1-102(22)(C); and (2) abandonment by willful failure to support and willful failure to visit, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i). Father also appeals the trial court's finding that termination of his parental rights is in the children's best interests. Because Appellees did not meet their burden to show that Father willfully failed to provide support for the children, we reverse the trial court's finding as to the ground of abandonment by willful failure to support. The trial court's order is otherwise affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed in Part, Affirmed in Part, and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and W. NEAL MCBRAYER, JJ., joined.

Daniel Lyn Graves, II, Murfreesboro, Tennessee, for the appellant, Christopher B.

Kirk D. Catron, Murfreesboro, Tennessee, for the appellees, Angela P. and David P.

**OPINION**

**I. Background**

There are two minor children at issue in this case, Anna B. (d.o.b. October of 2002) and Ella B. (d.o.b. August of 2004) (together, the "Children").[1] The Children's parents are

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

Appellant Christopher B. ("Father") and Angela P. ("Mother"). Mother and Father were married when the Children were born. As discussed below, Mother and Father are divorced, and Mother has remarried David P. (together with Mother, "Appellees"). At the time Mother and Father were married, Mother had a child from a previous relationship, Jenna B., who is now an adult.

After discovering that Father had sexually abused Jenna B., who was approximately eleven years old at the time of the abuse, Mother filed a petition for an order of protection on May 24, 2010. The trial court issued an ex parte order, enjoining Father from having any contact with the Children, Jenna B., or Mother. On May 25, 2010, Mother filed a complaint for divorce and for a temporary restraining order against Father; the trial court issued a temporary restraining order, which prohibited Father from having any contact with the Children. Thereafter, on July 27, 2010, Mother and Father entered into an agreed order, which allowed Father supervised visitation with the Children for four hours per month. On August 11, 2011, the parties were granted a divorce. The trial court also extended its order of protection until November 6, 2013; after that date, no further orders of protection were entered.

Concurrent with their divorce, Mother and Father entered into a Marital Dissolution Agreement and an agreed Permanent Parenting Plan. The parenting plan named Mother as the Children's primary residential parent, and Father was prohibited from any contact with the Children. Father was ordered to pay $415 per month in child support. At the time the parenting plan was entered, the trial court found that Father owed $4,140 in child support arrears.

Criminal charges were brought against Father stemming from the sexual abuse against Jenna B. Father was charged with five counts of rape of a child in Cannon County and three counts of soliciting sexual exploitation of a minor in Rutherford County. As to the Cannon County charges, Father entered a best interest plea to two reduced charges of attempted aggravated sexual battery, a Class C Felony. Tenn. Code Ann. §39-13-504. Under his plea agreement, Father received a suspended sentence of six years for each count, to run consecutively. As part of his Cannon County plea agreement, Father agreed that he would "have no contact with [the] victim or [the] victim's family." Concerning the Rutherford County charges, Father pled guilty to one count of soliciting sexual exploitation of a minor, a Class B Felony. Tenn. Code Ann. §39-13-529. Father was sentenced to ten years, with one year of incarceration in Rutherford County, which he served from October of 2010 to July of 2011. Father's remaining sentence was suspended, and he was placed on probation for nine years. As a condition of his Rutherford County plea agreement, Father agreed that "he will have no unsupervised contact with any minor children, including his own, the supervisor will be approved by the mother of the children prior to any visitation." Father was still on probation at the time of the hearing in this case. As a condition of his pleas, Father was required to register as a sex offender.

On October 16, 2014, Appellees filed a petition to terminate Father's parental rights to the Children and for step-parent adoption. As grounds for termination of Father's parental rights, Appellees alleged abandonment, by willful failure to visit and willful failure to support, and severe child abuse. On November 14, 2014, Father filed an answer, wherein he contested Appellees' petition for termination of his parental rights. Thereafter, the matter was continued for purposes of appointing a guardian ad litem for the Children; the guardian ad litem was appointed on May 8, 2015. Immediately before the appointment of the guardian ad litem, on May 6, 2015, Father filed a motion for supervised visitation with the Children. By order of September 18, 2015, the trial court denied Father's motion for supervised visitation, finding that it did not have jurisdiction over modification of the parenting plan.

The trial court heard the petition to terminate Father's parental rights on December 7, 2015. Final arguments were heard on February 17, 2016. By order of March 21, 2016, the trial court terminated Father's parental rights on grounds of abandonment, by willful failure to support and willful failure to visit, and severe child abuse. The trial court also found that termination of Father's parental rights is in the Children's best interests. Father appeals.

## II. Issues

Father raises two issues as stated in his brief:

1. Whether the trial court erred in finding grounds to terminate Biological Father's parental rights.

2. Whether the trial court erred in finding that termination of Biological Father's rights was in the child[ren]'s best interests.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash–Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367

(Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We then make our "own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010). We review the trial court's conclusions of law de novo with no presumption of correctness. *In re J.C.D.*, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

### IV. Grounds for Termination of Parental Rights

As noted earlier, the trial court relied on the following statutory grounds in terminating Appellant's parental rights: (1) Severe Child Abuse under Tennessee Code Annotated Section 36-1-113(g)(4); (2) abandonment by willful failure to pay support and willful failure to visit, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i). Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Here, we note that, although Appellant states his first issue broadly, i.e., "[w]hether the trial court erred in finding grounds to terminate [Father's] parental rights," his appellate brief fails to address the severe child abuse ground. Tennessee Rule of Appellate Procedure 13(b) provides that appellate review will generally only extend to those issues presented for review. Although an issue may have been presented at trial, "a party's failure to brief it ordinarily constitutes waiver or abandonment of the issue." *Mosby v. Colson*, No. W2006-00490-COA-R3-CV, 2006 WL 2354763, at *10 (Tenn. Ct. App. August 14, 2006) (other citations omitted); *see also Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn.Ct.App.2006) (failure "to cite to any authority or to construct an argument regarding

[a] position on appeal" constitutes a waiver of the issue); ***Bean v. Bean***, 40 S.W.3d 52, 55-56 (Tenn.Ct.App.2000) ("Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue."). However, in the recent case of ***In re Carrington H.***, the Tennessee Supreme Court carved an exception to the general rule of waiver, which exception is applicable in termination of parental rights cases, to wit:

> Although . . . issues not raised in the Court of Appeals generally will not be considered by this Court, there are exceptions to this general rule. Indeed, we recognized recently that "Rules 13(b) and 36(a) of the Tennessee Rules of Appellate Procedure, considered together, give appellate courts considerable discretion to consider issues that have not been properly presented in order to achieve fairness and justice." ***In re Kaliyah***, 455 S.W.3d at 540 (footnote omitted). We exercised this discretion in that case to consider an issue that DCS had not raised in either the trial court or the Court of Appeals. ***Id.*** DCS's argument on this point is unpersuasive. Therefore, consistent with our statement in ***In re Angela E.***, we hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal. 303 S.W.3d at 251 n. 14.

***In re Carrington H.***, 483 S.W.3d 507, 525-26 (Tenn. 2016). Accordingly, this Court will address both of the statutory grounds that the trial court relied on in terminating Father's parental rights.


### A. Severe Child Abuse

Tennessee Code Annotated Section 36-1-113(g)(4) provides that termination of parental rights may be based upon severe child abuse:

> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tennessee Code Annotated Section 37-1-102 defines "severe child abuse," in relevant part, as "[t]he commission of any act towards the child prohibited by §§39-13-502-- 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005." Tenn. Code Ann. §37-1-

102(22)(C).  It is undisputed that Father pled guilty, in Cannon County, to two counts of attempted aggravated sexual battery under Tennessee Code Annotated Section 39-13-504.[2]

Concerning the ground of severe child abuse, in its order terminating Father's parental rights, the trial court found, in relevant part, as follows:

15.  That the trial brief of the guardian ad litem, . . . which the court has read, clearly states on page 5, "Did the defendant's criminal charges qualify his grounds for termination of defendant's parental rights pursuant to T.C.A. §36-1-113." And the answer is "yes."  And the Guardian ad litem goes on to state the authority for such;

16.  That the trial  brief for the father . . . under issue number 3, "[d]id the father's criminal charges qualify as grounds for termination of father's parental rights pursuant to T.C.A. §36-1-113, are the father's criminal charges considered a condition of severe abuse as defined in T.C.A. §36-1-113(g)(4-5)."  In the brief is stated "Father concedes that under the provisions of T.C.A. §36-1-113(g)(4-5), that he was incarcerated for a period of time that would by strict language of the statute give this court a ground for this petition."  However, father emphasized his best interest plea was made with intent of being able to seek supervised visits with his children and, thus to maintain a relationship with them for an opportunity to stay in their li[ves].

***

18.  That this Court has inquired by asking all counsel to address the Court with trial briefs addressing certain issues and specifically, the criminal charges, the incarceration, et cetera.  And further, at the conclusion of their arguments today, this Court asked counsel if they agreed that issue pertaining to father's criminal convictions had been resolved to their satisfaction from the evidence and was not an issue for this Court, based upon the Court's reading of the trial briefs, and their respective positions from their arguments.  All three counsel for the parties involved acknowledged that, in fact, it was their representation to this Court that this ground is proven to terminate one's parental rights.

Although the trial court's order indicates that Father conceded that Father's criminal charges

---

[2] Tennessee Code Annotated Section 39-13-504 defines aggravated sexual battery as:

(a)  Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
***
(4) The victim is less than thirteen (13) years of age.

were sufficient to satisfy the statutory definition of severe child abuse, the trial court notes that "[F]ather emphasized his best interest plea was made with intent of being able to seek supervised visits with his children and, thus to maintain a relationship with them for an opportunity to stay in their li[ves]." Although, as discussed above, Father has not briefed his argument for reversal of this ground, as noted by the trial court, during the hearing on the petition to terminate his parental rights, Father testified at length about his decision to enter *Alford* best interest pleas in the criminal cases.[3] From his trial testimony, we glean that Father's argument is that, although his criminal charges satisfy the statutory definition of "severe child abuse," his *Alford* plea was not a finding by the criminal court, and, thus, the statutory language, i.e., "[t]he parent . . . **has been found** to have committed severe child abuse . . . under a prior order of a court," was not satisfied. Tenn. Code Ann. § 36-1-113(g)(4) (emphasis added). However, we need not address the question of whether an *Alford* plea constitutes a "finding" of severe child abuse for purposes of termination of a parent's rights. By its plain language, Tennessee Code Annotated Section 36-1-113(g)(4) does not require that the finding of severe child abuse be made by a court other than the court hearing the petition to terminate. Rather, the statute provides avenues for a finding of severe child abuse. First, the finding may be made in "a prior order of a court;" in the alternative, the parent may be "found **by the court hearing the petition to terminate parental rights** . . . to have committed severe child abuse against . . . any . . . half-sibling of such child[, who is the subject of the petition to terminate parental rights]." *Id*. (emphasis added). Here, the trial court made this finding in its order terminating Father's parental rights. Specifically, the trial court held:

> 25. That Jenna [B.] placed trust in [Appellant] as her stepfather and that trust was violated. She was the victim of sexual abuse by her stepfather.

The question, then, is whether this finding is supported by clear and convincing evidence in the record. Turning to the record, Father's own testimony supports the trial court's finding. In relevant part, Father testified:

> Q. Did you commit these crimes against [Jenna B.]?
> A. Yes, sir.
>
> Q. Okay. You're saying, yes, you did commit these crimes. We've got it on
>
> record now.

***

---

[3] An *Alford* plea, also known as the best interest plea, allows a criminal defendant to plead guilty while asserting his or her innocence. *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).

Q. Did you choose to . . . have inappropriate relations with Jenna [B.]?

A. That was a bad choice I chose to.

Tennessee Code Annotated Section 39-13-504 defines aggravated sexual battery as "unlawful sexual contact with a victim by the defendant" when "[t]he victim is less than thirteen years of age." It is undisputed that, at the time of the sexual abuse, Jenna B. was no older than eleven. Concerning the nature of the "inappropriate relations" Father admitting to having with his step-daughter, Father testified specifically as to what acts he committed. Without including Father's exact testimony, suffice it to say that, after review of the transcript, it is clear that Father, by his own admission, touched Jenna B.'s genitals. From this testimony, we conclude that there is clear and convincing evidence to support the trial court's finding that Father sexually abused Jenna B. in such a way as to satisfy the statutory definition of aggravated sexual battery. Accordingly, the evidence clearly and convincingly supports the trial court's finding of severe child abuse as set out in Tennessee Code Annotated Section 36-1-113(g)(4).

## B. Abandonment

The trial court also found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by willful failure to pay support and willful failure to visit pursuant to Tennessee Code Annotated Section 36-1-113(g)(1) and Tennessee Code Annotated Section 36-1-102(1)(A)(I). In pertinent part, Tennessee Code Annotated Section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102 defines "abandonment," in relevant part as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent

- 8 -

or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i). As found by the trial court, the relevant, four-month time period in this case is June 16, 2014 until October 16, 2014.

In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.... In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing . . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005 (internal citations and footnotes omitted).

### 1. Willful Failure to Support

For purposes of Tennessee Code Annotated Section 36-1-102(1)(A)(i), "token support" means that the support, under the circumstances of an individual case, is not significant considering the parent's means. Tenn. Code Ann. § 36-1-102(1)(B). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)).

In its order terminating Father's parental rights, the trial court made the following, relevant findings concerning the ground of abandonment by willful failure to support:

> 28. That the father has failed to pay support other than nominal support. The father was ordered to pay child support and chose to spend his money in other ways, rather than pay his support obligation. The father was in arrears at the time of divorce in the amount of $4,140.00, and remains in arrears as of today. That in the four months preceding the filing of this petition the father was ordered to pay around $1,600.00 and he paid $500.00, less than a third of the court ordered amount. The father's number one priority was to pay to support his children, yet he chose to spend his money to make sure he did not go back to jail. The Court finds that admirable, however he made choices that led him to that situation. Children need financial support for their needs. In this case the father failed to support them to help make those need. His argument that he had other things facing him such as court fees and costs, but this does not excuse or lessen the fact that he paid approximately less than a third of the court ordered child support during that four month period. The Court finds that there was a failure to pay child support, other than nominal amounts. This was a conscious decision made, and the Court finds it was a willful failure to pay. Therefore, the Court finds that there are grounds for abandonment for failing to pay support. . . .

Trial Exhibit 4 is a record of Father's child support payments. This exhibit shows that during the relevant four month time period, i.e., June 16 through October 16, 2014, Father paid $500.00; however, what the record does not show is what Father's income was during this period. The trial court makes no finding as to his income, and, from our review of the record, it appears that Appellees provided no evidence of Father's income. During his testimony, Father admitted that "I know that I have not paid [my child support obligation] in full." However, Father also testified that, after his arrest, he was fired from his job as an EMT and that he had not been able to procure comparable employment since his release from jail. Although Father also admitted that he had not attempted to have his support obligation modified due to his changed circumstances, importantly, the burden of proof as to income and ability to pay (in the termination of parental rights case) was on Appellees and not on Father. In this regard, the instant case is factually similar to ***In re The Adoption of Angela E., et al.***, wherein the Tennessee Supreme Court held that the evidence was insufficient to establish that father had abandoned the child based on willful failure to support. Specifically, the Court stated:

> Mother and Stepfather contend that Father had the ability to pay his child support obligation in full and that his payment of $3500 of the $10,336 owed between March 2005 and July 2005 was insufficient given his means. The

evidence concerning Father's income and expenses is limited at best, however, and we conclude that Mother and Stepfather failed to prove that Father's payment history between March 5, 2005, and July 5, 2005, reflected mere "token support."

\*\*\*

For the four-month period immediately preceding the filing of the petition to terminate parental rights, Father paid $3500 in child support to Mother. No evidence was introduced concerning Father's monthly expenses.

***In re The Adoption of Angela E., et al.***, 402 S.W.3d 636, 641 (Tenn. 2013). The same is true in this case. In order to meet their burden to show that Father willfully failed to pay support, or made only token support, Appellees must show that Father "ha[d] the capacity to provide the support, ma[de] no attempt to provide support, and ha[d] no justifiable excuse for not providing the support." ***In re J.J.C.***, 148 S.W.3d at 926 (citation omitted). In the absence of any proof as to Father's income and expenses during the relevant, four-month time period, we conclude that Appellees have failed to show, by clear and convincing proof, that Father has abandoned the Children by willful failure to provide support. Accordingly, we reverse this ground for termination of his parental rights.

### 2. Willful Failure to Visit

As discussed above, prior to the entry of the final decree of divorce, Father was allowed four hours of supervised visitation with the Children per month. Thereafter, Mother petitioned for, and was granted, an order of protection, which precluded Father from having contact with the Children. The order of protection expired in November of 2013. Concurrent with their divorce, Father and Mother entered into a Marital Dissolution Agreement, under which Father was granted no visitation or contact with the Children. Furthermore, under his plea agreements, which were entered in the criminal proceedings, Father agreed that he would "have no contact with [the] victim or [the] victim's family," and that he would "have no unsupervised contact with any minor children, including his own, the supervisor will be approved by the mother of the children prior to any visitation." It is undisputed that Father had no contact with the Children during the relevant, four-month time period. In fact, at the time of the hearing on the petition to terminate his parental rights, Father had not seen the Children for approximately six years. Father's argument, both at trial and on appeal, is that the previous orders of the court precluded him from contact with the Children and that, accordingly, his failure to visit was not willful. Father's argument is almost identical to the argument made by the father in ***In re The Adoption of Angela E., et al.*** In that case, father did not dispute the fact that he failed to visit his children during the relevant time period; rather, he argued that his actions were not willful because his visitation had been suspended by court order. 402 S.W.3d at 642. In affirming this Court's decision that the prior order suspending father's visitation rights did not preclude a finding that father

- 11 -

willfully failed to visit the children, the Tennessee Supreme Court stated:

> At the time of the filing of the petition to terminate parental rights in July 2005, Father had not exercised parenting time with the children for almost three years. He had taken no steps to have his parenting time reinstated despite language in the August 2002 order providing that he could petition the trial court for "a hearing at his earliest convenience." After filing the petition to reinstate visitation in July 2003, Father took no further action to pursue the matter. He did not attempt to see the children until after the original termination petition was filed in July 2005. As the Court of Appeals observed, this is not a case in which a parent was actively trying to maintain visitation.

402 S.W.3d at 642 (citations omitted). Although, in the instant case, Father testified that he has "tried" to see the Children, he was unable to provide any proof to support his statement. In short, with the exception of Father's May 6, 2015 motion for supervised visitation, which was filed after the commencement of the termination of parental rights proceedings, there is no indication in the record that Father has made any attempt to seek visitation through a court, or that he has sought any visitation through Mother. Despite Father's attempt to seek visitation during these proceedings, Tennessee Code Annotated Section 36-1-102(1)(F) clearly states that "[a]bandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental . . . rights."

In its order terminating his parental rights, the trial court made the following, relevant findings concerning Father's failure to visit:

> 23. That this Court and all Courts are available to return to, bring proceedings in front of, and request the exercise of visitation of rights and privileges. No effort was undertaken by father to do so. Father has never filed anything, never gone to court to request or made any effort to establish any visitation with his two children. . . since the parties' divorce.
>
> ***
>
> Father chose to make a plea in the criminal charges and chose to agree to a parenting plan that gave mother 365 days a year and has done nothing to modify that in any way.
>
> 27. That the father has willfully failed to visit or otherwise seek visitation with his minor children . . .

The record supports the foregoing findings. Under the holding in *In re Adoption of Angela E.*, we conclude that Father's failure to pursue visitation was willful. Accordingly, we affirm the trial court's finding as to this ground for termination of his parental rights.

- 12 -

Although we reverse the trial court's finding as to the ground of abandonment by willful failure to support, in order to terminate parental rights, the moving party need only establish one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c). Because we have affirmed the remaining grounds that the trial court relied on in terminating Father's parental rights, i.e., abandonment by willful failure to visit and severe child abuse, we proceed to the review of the trial court's finding that termination of Father's parental rights is in the Children's best interests.

## V. Best Interests

When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d at 877. The focus shifts to the child's best interest. *Id*. at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. These factors include, but are not limited to, the following:

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

In its order terminating Father's parental rights, the trial court primarily relied on the foregoing enumerated criteria in reaching its determination that termination of Father's parental rights is in the Children's best interests. Concerning criterion three, i.e., whether the parent has maintained regular visitations, the trial court found that this factor weighed in favor of Mother. In reaching this conclusion, the trial court reiterated its findings under the ground of abandonment by willful failure to visit, which we have discussed above. Concerning criterion four, i.e., whether a meaningful relationship has been established between parent and child, the trial court found that "[t]he [F]ather and [C]hildren . . . have not had any relationship for . . . an extended period of time." The record clearly and convincingly supports this finding. Both children testified that they have very few memories of their Father, and they have had no contact with him for many years. The record supports this testimony; at the time of the hearing, Father had not seen these Children for approximately six years. In addition, he made no effort to write to them or to call them. Accordingly, we conclude that there is clear and convincing evidence in the record to support the trial court's finding. As to the fifth criterion, i.e., the effect of a change in caretakers and physical environment, the evidence shows that both children are well adjusted in their current home with Appellees. Both testified that they consider David P. to be their father. Mr. P. testified that he, too, views the Children as his own and that he has taken on the role of father in all ways. The record contains no evidence concerning Father's current living situation or whether the physical environment he would provide for the Children would be harmful. Finally, as to the sixth criterion, i.e., whether the parent has sexually abused another child in the family, the trial court reiterated its findings under the ground of severe child abuse, which we have discussed in detail above. At the time of the hearing on the petition to terminate parental rights, Anna B. was approximately thirteen years old; Ella B. was

approximately eleven years old. At the time Father abused Jenna B., she was eleven years old. Mother testified that she had grave concerns about any contact between Father and the girls, especially in light of Jenna B.'s abuse at approximately the same age as the Children. Both children testified that they had some idea about what had happened to Jenna B., and both stated definitively that they did not want any relationship with Father. From the totality of the circumstance, we conclude that there is clear and convincing evidence to support the trial court's finding that termination of Father's parental rights is in the Children's best interests.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Father's parental rights on the ground of abandonment by willful failure to support. We affirm the termination of Father's parental rights on the grounds of severe child abuse and abandonment by willful failure to visit. We also affirm the trial court's finding that termination of Father's parental rights is in the Children's best interests. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant/Father, Christopher B. Because Christopher B. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE
